UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

BRANDON OLIVERA and STEVEN
ORTMANN,

        Plaintiffs,

   v.

BRIAN VIZZUSI; MARK SIEMENS;
CITY OF LINCOLN; CITY OF
ROCKLIN; LINCOLN POLICE
DEPARTMENT; and ROCKLIN POLICE
DEPARTMENT,

        Defendants.

_____/

NO. CIV. 2:10-1747 WBS GGH

MEMORANDUM AND ORDER RE:
MOTION TO DISMISS

----oo0oo----

        Plaintiffs Brandon Olivera and Steven Ortmann filed
this action against Brian Vizzusi, Mark Siemens, City of Lincoln,
City of Rocklin, Lincoln Police Department, and Rocklin Police
Department arising from the alleged disclosure of plaintiffs'
personnel records.  City of Rocklin ("Rocklin"), Rocklin Police
Department ("Rocklin PD"), and Mark Siemens (collectively
"Rocklin defendants") now move to dismiss the First Amended

1

Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

I.    Factual and Procedural Background

On or around October 30, 2003, Rocklin PD Sergeant Vizzusi allegedly conducted an administrative investigation of plaintiffs, who were Rocklin PD police officers,[1] and prepared an internal affairs investigation report ("report"). (FAC ¶ 17 (Docket No. 16).)  Vizzusi then transmitted the report to Rocklin PD Chief of Police Siemens, but allegedly retained a copy of the report. (Id. ¶¶ 18-19.)  The investigation was subsequently closed. (Id. ¶ 17.)

The FAC alleges that the report consisted of over twenty pages (id. ¶ 39) and contained: "confidential personnel information" (id. ¶ 17) and "private personal information" (id. ¶ 27) about plaintiffs, "significantly more detailed information concerning the alleged misconduct than available in any public record" (id. ¶ 39), "both Olivera's and Ortmann['s] names, positions at Rocklin PD, and a detailed description of alleged misconduct" (id. ¶ 42), "summaries of interviews" with plaintiffs (id. ¶ 43), "complaints and investigations of complaints" (id. ¶ 48), and "names of the individuals involved . . . , the allegations of misconduct against them, witness statements, analysis of the evidence and recommendations on the disposition." (Id. ¶ 49.)  The FAC alleges that the report was confidential

---

[1]    Olivera is currently employed as a County of Placer District Attorney investigator. (FAC ¶ 9.)  Ortmann is still a police officer for Rocklin PD. (Id. ¶ 10.)

pursuant to state law regarding peace officers' personnel records.  (Id. ¶¶ 40-41, 52, 84, 89.)

In 2004, Vizzusi left Rocklin PD and was hired by City of Lincoln ("Lincoln") as a Lincoln Police Department ("Lincoln PD") lieutenant.  (Id. ¶ 20.)  Vizzusi allegedly took a copy of the report with him to Lincoln PD, which Siemens allegedly "authorized, permitted, or otherwise allowed."  (Id. ¶¶ 23, 28.) Vizzusi was eventually appointed as Lincoln PD Chief of Police in 2006.  (Id. ¶¶ 21-22.)

On or around June 15, 2007, Vizzusi met with Lincoln PD Lieutenant Paul Shlegren and Lincoln PD Sergeant Brendan Lebrecht.  (Id. ¶ 25.)  Vizzusi provided them with a paper copy of the report and emailed them a copy immediately after the meeting.  (Id. ¶¶ 25-26.)  Vizzusi allegedly told Shlegren and Lebrecht that Siemens had given him permission to distribute the report to members of the Lincoln PD.  (Id. ¶ 25.)  The FAC alleges that the emailed copy was not redacted and contained plaintiffs' names, positions, a detailed description of plaintiffs' alleged misconduct, and summaries of interviews with plaintiffs.  (Id. ¶¶ 42-43.)  The FAC does not allege whether the paper copy given to Shlegren and Brendan was redacted or contained this same information.

The disclosure to Shlegren and Lebrecht allegedly "result[ed]" in further disclosures of the report and it "became widely known throughout the Lincoln PD, law enforcement communities in the region, and to other third persons and agencies."  (Id. ¶ 30.)  In January of 2010, a peace officer for Placer County "revealed the disclosure" to plaintiffs.  (Id. ¶

3

34.)  On or about January 27, 2010, plaintiffs' counsel requested that Siemens "take appropriate steps to investigate the Police Department's apparent breach of its duty to safeguard its employees' personnel files." (Id. ¶ 34.)  Plaintiffs' counsel also requested that the Lincoln City Manager account for all copies of plaintiffs' "personnel files," destroy all electronic copies, return all physical copies, and provide a sworn affidavit from Vizzusi[2] attesting that all copies had been destroyed or returned to plaintiffs.  (Id. ¶ 35.)

On February 12, 2010, Lincoln confirmed that Vizzusi had "disseminated" plaintiffs' "personnel records," indicated the records would be destroyed, and agreed to provide the physical copy of the records to plaintiffs' counsel.  (Id. ¶ 36.)  On March 18, 2010, Lincoln provided the requested signed declaration from Vizzusi to plaintiffs' counsel.  (Id. ¶ 37.)  Plaintiffs allege that electronic copies are still maintained on Lincoln PD's computers.  (Id. ¶ 38.)  Plaintiffs also allege that they have been stigmatized, humiliated, and embarrassed.  (Id. ¶ 32.)

On July 7, 2010, plaintiffs filed an initial complaint alleging various federal and state law claims. (Docket No. 1.)  On September 9, 2010, plaintiffs filed the FAC, asserting federal claims pursuant to 42 U.S.C. §§ 1983 and 1985.  The FAC also asserts state law claims for violations of California Constitution Article I, section 1 (right to privacy), California Penal Code section 832.7 (confidentiality of peace officers' personnel records), California Government Code section 6254

---

[2]    In or about January of 2010, Vizzusi was "separated" from his employment with Lincoln and Lincoln PD.  (FAC ¶ 51.)

1  (California Public Records Act's exemptions), common law

2  intrusion into private affairs, California Civil Code section

3  1798.42 (California Information Practices Act of 1977), common

4  law negligent infliction of emotional distress, common law

5  intentional infliction of emotional distress, and common law

6  negligent hiring, supervision, and retention.  The Rocklin

7  defendants now move to dismiss the FAC pursuant to Rule 12(b)(6).

8  II.  <u>Discussion</u>

9          To survive a motion to dismiss, a plaintiff must plead

10  "only enough facts to state a claim to relief that is plausible

11  on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570

12  (2007).  This "plausibility standard," however, "asks for more

13  than a sheer possibility that a defendant has acted unlawfully,"

14  and where a complaint pleads facts that are "merely consistent

15  with" a defendant's liability, it "stops short of the line

16  between possibility and plausibility."  <u>Ashcroft v. Iqbal</u>, ---

17  U.S. ----, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks

18  omitted) (quoting <u>Twombly</u>, 550 U.S. at 556-57).  In deciding

19  whether a plaintiff has stated a claim, the court must assume

20  that the plaintiff's allegations are true and draw all reasonable

21  inferences in the plaintiff's favor.  <u>Usher v. City of L.A.</u>, 828

22  F.2d 556, 561 (9th Cir. 1987).  However, the court is not

23  required to accept as true "allegations that are merely

24  conclusory, unwarranted deductions of fact, or unreasonable

25  inferences."  <u>In re Gilead Scis. Sec. Litig.</u>, 536 F.3d 1049, 1055

26  (9th Cir. 2008) (internal quotation marks omitted).

27      A.  <u>Section 1983 Claims against the Rocklin Defendants</u>

28          In relevant part, § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Section 1983 itself is not a source of substantive rights; it provides a cause of action against any person who, under color of state law, deprives an individual of federal constitutional rights or limited federal statutory rights.  42 U.S.C. § 1983; Graham v. Connor, 490 U.S. 386, 393-94 (1989).  Here, plaintiffs allege violations of the right to privacy apparently based on the First, Fourth, Fifth, Ninth, and Fourteenth Amendments.  (See FAC ¶ 57 ("a penumbra of constitutional rights").)

        The Ninth Circuit has held that the Constitution protects an "individual interest in avoiding disclosure of personal matters."  In re Crawford, 194 F.3d 954, 958 (9th Cir. 1999) (internal quotation marks omitted); see, e.g., Nelson v. NASA, 530 F.3d 865, 879 (9th Cir. 2008) ("Information relating to medical treatment and psychological counseling fall squarely within the domain protected by the constitutional right to informational privacy."), cert. granted,  --- U.S. ----, 130 S. Ct. 1755 (2010); Crawford, 194 F.3d at 958 (agreeing that public disclosure of social security numbers may implicate the right to informational privacy in "an era of rampant identity theft"); Norman-Bloodsaw v. Lawrence Berkeley Lab., 135 F.3d 1260, 1269 (9th Cir. 1998) ("The constitutionally protected privacy interest in avoiding disclosure of personal matters clearly encompasses

6

medical information and its confidentiality."); <u>Thorne v. City of El Segundo</u>, 726 F.2d 459, 468 (9th Cir. 1983) (holding that questioning police applicant about her prior sexual activity violated her right to informational privacy).

While the constitutional right to privacy includes the "individual interest in avoiding disclosure of personal matters" <u>Whalen v. Rose</u>, 429 U.S. 589, 599 (1977), the "courts have construed this right narrowly, limiting it to those rights which are 'fundamental or implicit in the concept of ordered liberty.'" <u>Carver v. Rathlesberger</u>, No. 04-1918 DFL PAN, 2005 WL 3080856, at *2 (E.D. Cal. Nov. 11, 2005) (quoting <u>St. Michael's Convalescent Hosp. v. Cal.</u>, 643 F.2d 1369, 1375 (9th Cir. 1981)); <u>see also</u> <u>Nelson v. NASA</u>, 568 F.3d 1028, 1053 (9th Cir. 2009) (denying rehearing en banc) (Kozinksi, J., dissenting) (noting an important distinction recognized by other circuits between "information that pertains to a fundamental right" and a "free-standing right not to have the world know bad things about you" and stating that the former right seems to stand on "far sounder constitutional footing").

In <u>Kallstrom v. City of Columbus</u>, 136 F.3d 1055, 1061 (6th Cir. 1998), the Sixth Circuit addressed disclosure of police officers' personal information in their personnel records, which involved undercover police officers who investigated a drug conspiracy among gang members and testified against them at trial.  There, the court held that the officers' privacy interests were of a constitutional dimension because they implicated a fundamental interest "in preserving their lives and the lives of their family members, as well as preserving their

7

personal security and bodily integrity." Id. at 1062; see also Flanagan v. Munger, 890 F.2d 1557, 1570-71 (10th Cir. 1989) (holding that fact that police officers were reprimanded for off-duty ownership of store that sold, inter alia, adult videos was not of such a "highly personal or sensitive nature that it falls within the zone of confidentiality").

Here, plaintiffs' allegations of the content of the report are conclusory and general. (See, e.g., FAC ¶¶ 17, 27, 39, 42-43, 48-49.)  Considering the nature of the allegations, the court is unable to plausibly infer that defendants disclosed information that implicates "rights which are 'fundamental or implicit in the concept of ordered liberty,'" Carver, 2005 WL 3080856, at *2 (quoting St. Michael's Convalescent Hosp., 643 F.2d at 1375), or disclosed information that is of such a "highly personal or sensitive nature that it falls within the zone of confidentiality." Flanagan, 890 F.2d at 1570-71.  The FAC does not even allege facts about the report that are contained in the public record, which the FAC suggests exists when it alleges that the report contained "significantly more detailed information concerning the alleged misconduct than available in any public record." (FAC ¶ 39.)  The FAC thus fails to sufficiently allege a constitutional violation.

Because plaintiffs fail to sufficiently allege a constitutional violation, plaintiffs have also not sufficiently alleged Monell liability.  Monell liability requires an underlying constitutional violation. Dixon v. Wallowa Cnty., 336 F.3d 1013, 1021 (9th Cir. 2003); see also Murray v. City of Carlsbad, No. 08-2121, 2010 WL 2839477, at *8 (C.D. Cal. July 19,

1  2010) ("Monell liability cannot be imposed on the City in the

2  absence of a constitutional violation by police officers.").

3  Accordingly, the court will grant the Rocklin defendants' motion

4  to dismiss the § 1983 claims.[3]

5       B.   State Law Privacy Claims against the Rocklin Defendants

6            Plaintiffs' fourth claim alleges violations of

7  California Constitution Article I, section 1 (right to privacy),

8  California Penal Code section 832.7 (confidentiality of peace

9  officers' personnel records), and California Government Code

10  section 6254 (California Public Records Act's exemptions).  The

11  fifth claim is for common law intrusion into private affairs.

12           A plaintiff alleging a California constitutional

13  privacy claim must establish three elements.  Hill v. Nat'l

14  Collegiate Athletic Ass'n, 7 Cal. 4th 1, 39-40 (1994).  First,

15  the plaintiff must establish a legally protected privacy

16  interest.  Id. 39-40.  Second, the plaintiff must establish "a

17  reasonable expectation of privacy in the circumstances."  Id.

18  The court must look to "customs, practices, and physical settings

19  surrounding particular activities" and the opportunity to be

20  notified in advance and consent to the intrusion.  Id. at 36-37.

21  Third, the plaintiff must establish "conduct by defendant

22  constituting a serious invasion of privacy."  Id. at 39-40.

23  "Actionable invasions of privacy must be sufficiently serious in

24

25       [3]    The § 1985 claim will also accordingly be dismissed.
   See Thornton v. City of St. Helens, 425 F.3d 1158, 1168 (9th Cir.
26  2005) ("The absence of a [42 U.S.C. § ] 1983 deprivation of
   rights precludes a [42 U.S.C. §] 1985 conspiracy claim predicated
27  on the same allegations.")  (internal quotation marks omitted);
   see also Caldeira v. Cnty. of Kauai, 866 F.2d 1175, 1182 (9th
28  Cir. 1989).

1   their nature, scope, and actual or potential impact to constitute
2   an egregious breach of the social norms underlying the privacy
3   right."  Id. at 37.

4          There are two elements for a common law privacy claim:
5   "First, the defendant must intentionally intrude into a place,
6   conversation, or matter as to which the plaintiff has a
7   reasonable expectation of privacy.  Second, the intrusion must
8   occur in a manner highly offensive to a reasonable person."
9   Hernandez v. Hillsides, Inc., 47 Cal. 4th 272, 286 (2009).  The
10  second element "essentially involves a policy determination" as
11  to whether the intrusion was "highly offensive under the
12  particular circumstances," considering such factors as the degree
13  and setting of the intrusion and the defendant's motives and
14  objectives.  Id. at 287 (internal quotation marks omitted).

15         While Rosales v. City of L.A., 82 Cal. App. 4th 419,
16  428 (2d Dist. 2000), held that section 832.7 does not authorize a
17  private cause of action for improper disclosure of peace
18  officers' personnel records,[4] that court applied the California
19  constitutional right to privacy to a city and its counsel's
20  disclosure of a police officer's personnel record to someone
21  suing the city based on the police officer's alleged sexual
22  misconduct.  Id., 82 Cal. App. 4th at 427.  The city and its
23  counsel "concede[d] that the personnel files were improperly
24  disclosed, without compliance with the applicable statutory
25  procedures."  Id. at 423 n.1.  The Rosales court held, "[the

26  _____

27         [4]    Records that section 832.7 prohibits from disclosure
    are exempt from disclosure pursuant to California Public Records
    Act's section 6254.  Copley Press, Inc. v. Super. Ct., 39 Cal.
28  4th 1272, 1284-86 (2006).

plaintiff] has failed to state a claim for invasion of privacy because he could not have a reasonable expectation that his personnel records would not be disclosed in the litigation relating to the [alleged misconduct]." Id. at 428-29.  The Rosales court also "conclude[d] that disclosure during the course of litigation is not the serious and egregious breach that would meet the standard for a privacy claim." Id. at 429.

Here, plaintiffs have sufficiently pled state law privacy claims.  Unlike in Rosales, the FAC's factual allegations plausibly suggest that plaintiffs had a "reasonable expectation that [their] personnel records would not be disclosed." Id. at 428-29.  The FAC alleges that the report was confidential pursuant to state law (FAC ¶¶ 40-41, 52, 84, 89) and that circumstances did not exist that would permit disclosure under state law, such as litigation.  (Id. ¶¶ 44-47, 50, 69.) Accordingly, the court will deny the Rocklin defendants' motion to dismiss the state law privacy claims.

C.   Claim for Violation of California Civil Code Section 1798.42 against the Rocklin Defendants

California Civil Code section 1798.42 provides: "In disclosing information contained in a record to an individual, an agency shall not disclose any personal information relating to another individual which may be contained in the record."  Cal. Civ. Code § 1798.42.  Section 1798.53 authorizes a civil action against persons acting outside the scope of employment for the state or a local agency.  Cal. Civ. Code § 1798.53.  Section 1798.45 authorizes a civil action against an "agency" for a violation, Cal. Civ. Code § 1798.45, and section 1798.3 defines

11

an agency as a "state office, officer, department, division, bureau, board, commission, or other state agency" and expressly excludes from this definition a "local agency."  Cal. Civ. Code § 1798.3(b)(4).

Thus, section 1798.42 "only applies to state agencies. Local agencies such as cities, as well as their officers, are exempt from prosecution."  Bush v. Klein, Nos. 08-3456, 08-3459, 2008 WL 4614438, at *4 (N.D. Cal. Oct. 16, 2008) (citation omitted); see also McColm v. S.F. Housing Auth., No. 02-5810, 2007 WL 1575883, at *15 (N.D. Cal. May 29, 2007) (declining to grant summary judgment to the housing authority based on the definition of agency because the housing authority had indicated it was a consortium of federal, state, and local actors). Because it is not alleged that the individual defendant was acting outside the scope of his employment, this claim stated against him fails.  The claim as against Rocklin and Rocklin PD also fails because they are not state agencies.  Accordingly, the court will grant the motion to dismiss this claim.

D.   Remaining State Law Claims

Plaintiffs' remaining claims against Rocklin, Rocklin PD, and Siemens are for negligent infliction of emotional distress, intentional infliction of emotional distress, and negligent hiring, supervision, and retention of Siemens and Vizzusi.  Plaintiffs' remaining state law claims against Rocklin and Rocklin PD rely on respondeat superior.  Section 815.2 provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would,

12

apart from this section, have given rise to a cause of action against that employee . . . ." Cal. Gov't Code § 815.2.  Public employees are liable to the same extent as private individuals. Cal. Gov't Code § 820.

>    1.    Common Law Claim for Negligent Infliction of
>           Emotional Distress against the Rocklin Defendants

"The negligent causing of emotional distress is not an independent tort but the tort of negligence.  The traditional elements of duty, breach of duty, causation, and damages apply." Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc., 48 Cal. 3d 583, 588 (1989).  A plaintiff must show "(1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." Mendoza v. City of L.A., 66 Cal. App. 4th 1333, 1339 (2d Dist. 1998).  Here, plaintiffs allege that they have been stigmatized, humiliated, and embarrassed by the disclosure of the report.  (FAC ¶ 32.)  The FAC alleges that the report was disclosed despite plaintiffs' reasonable expectation of privacy in the report.  Plaintiffs have sufficiently alleged facts that plausibly suggest negligent infliction of emotional distress. Accordingly, the court will deny the Rocklin defendants' motion to dismiss this claim.

>    2.    Common Law Claim for Intentional Infliction of
>           Emotional Distress against the Rocklin Defendants

A claim for intentional infliction of emotional distress requires: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress"; (2) "the

13

plaintiff's suffering severe or extreme emotional distress"; and

(3) "actual and proximate causation of the emotional distress by

the defendant's outrageous conduct." Christensen v. Super. Ct.

54 Cal. 3d 868, 903 (1991) (internal quotation marks omitted).

"Conduct to be outrageous must be so extreme as to exceed all

bounds of that usually tolerated in a civilized community." Id.

(internal quotation marks omitted).  Here, the FAC alleges that

Siemens gave Vizzusi permission to disclose the report to members

of the Lincoln PD (FAC ¶ 25) despite plaintiffs' reasonable

expectation of privacy in the report.  The report then allegedly

"became widely known throughout the Lincoln PD, law enforcement

communities in the region, and to other third persons and

agencies."  (Id. ¶ 30.)  Taking the alleged facts as true, it is

plausible that plaintiffs will be entitled to relief.

Accordingly, the court will deny the Rocklin defendants' motion

to dismiss this claim.

> 3.   Common Law Claims for Negligent Hiring,
>      Supervision, and Retention of Siemens and Vizzusi
>      against Rocklin and Rocklin PD

California recognizes the tort of negligence in hiring,

supervising, and retaining an employee who is incompetent or

unfit.  See Delfino v. Agilent Techs., Inc., 145 Cal. App. 4th

790, 815 (6th Dist. 2006); see also Jarbo v. Cnty. of Orange, No.

05-00202, 2010 WL 3584440, at *18 (N.D. Cal. Aug. 30, 2010)

("County's and the Sheriff's decisions regarding the hiring,

retention, and training of [deputy] are purely operational.

Thus, they are not subject to discretionary act immunity.").

Here, considering the alleged facts in the light most favorable

to plaintiffs, it is plausible that Siemens and Vizzusi were
negligently hired, supervised, or retained.  Accordingly, the
court will deny the Rocklin defendants' motion to dismiss these
claims.

IT IS THEREFORE ORDERED that the Rocklin defendants'
motion to dismiss be, and the same hereby is, GRANTED with
respect to the § 1983 claims, § 1985 claim, and claim for
violation of California Civil Code section 1798.42 and DENIED
with respect to the other claims.

Plaintiffs have twenty days from the date of this Order
to file an amended complaint, if they can do so consistent with
this Order.

DATED: November 12, 2010

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

15