UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

BRANDON OLIVERA and STEVEN ORTMANN,

       Plaintiffs,

    v.

BRIAN VIZZUSI; MARK SIEMENS; CITY OF LINCOLN; CITY OF ROCKLIN; LINCOLN POLICE DEPARTMENT; and ROCKLIN POLICE DEPARTMENT,

       Defendants.

_____/

NO. CIV. 2:10-1747 WBS GGH

<u>MEMORANDUM AND ORDER RE:</u>
<u>MOTION TO DISMISS</u>

----oo0oo----

      This case is before the court on defendants Mark Siemens and the City of Rocklin's motion to dismiss plaintiffs Brandon Olivera and Steven Ortmann's Third Amended Complaint ("TAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  To avoid repetition, the court will refrain from reciting the general facts underlying plaintiffs' lawsuit, which can be found

1

in the court's decisions granting defendants' prior motions to dismiss, Olivera v. Vizzusi, No. 2:10-1747, 2011 WL 219592 (E.D. Cal. Jan. 19, 2011), and Olivera v. Vizzusi, No. 2:10-1747, 2010 WL 4723712 (E.D. Cal. Nov. 15, 2010).[1]

In short, when plaintiffs were employed as City of Rocklin police officers, they were intoxicated while off duty and ultimately arrested one evening, resulting in an internal affairs investigation. (TAC ¶¶ 9-10, 17-21.) After completion of the investigation and resulting report about the incident, Siemens, who was the Chief of Police for the Rocklin Police Department,[2] allegedly allowed another officer to disclose the internal affairs investigation report to other police officers and "third persons, entities and agencies." (Id. ¶¶ 29-34.)

In their TAC, plaintiffs assert five claims under 42 U.S.C. § 1983 for violations of their informational privacy, Fourth Amendment, substantive due process, procedural due

---

[1]    Although the TAC still includes claims against Brian Vizzusi, the City of Lincoln, and the Lincoln Police Department, plaintiffs dismissed their claims against those defendants with prejudice on December 28, 2010, after the court determined that those defendants reached a settlement with plaintiffs in good faith. (Docket Nos. 40, 43.)

[2]    Plaintiffs have also named the City of Rocklin Police Department as a defendant. Municipal departments and sub-units of local governments, however, are generally not considered "persons" for the purpose of § 1983 liability. See United States v. Kama, 394 F.3d 1236, 1239 (9th Cir. 2005) (Ferguson, J., concurring) (municipal police departments and bureaus are generally not considered "persons" within the meaning of § 1983); Wade v. Fresno Police Dep't, No. 09-0588 AWI DLB, 2010 WL 2353525, at *4 (E.D. Cal. June 9, 2010) (holding a police department is not a "person" under § 1983); Vance v. Cnty. of Santa Clara, 928 F. Supp. 993, 995-96 (N.D. Cal. 1996) (naming a municipal department as a defendant "is not an appropriate means of pleading a § 1983 action against a municipality"). The proper defendant, which plaintiffs have also named, is the City of Rocklin.

1 process, and equal protection rights, a claim under 42 U.S.C. §
2 1985, <u>Monell</u> claims against the City of Rocklin, and numerous
3 state law claims.   Defendants now move to dismiss the TAC in its
4 entirety.

5 I.   <u>Legal Standard</u>

6       To survive a motion to dismiss, a plaintiff must plead
7 "only enough facts to state a claim to relief that is plausible
8 on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570
9 (2007).  This "plausibility standard," however, "asks for more
10 than a sheer possibility that a defendant has acted unlawfully,"
11 <u>Ashcroft v. Iqbal</u>, --- U.S. ----, ----, 129 S. Ct. 1937, 1949
12 (2009), and where a complaint pleads facts that are "'merely
13 consistent with' a defendant's liability, it 'stops short of the
14 line between possibility and plausibility of entitlement to
15 relief.'"  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557).  In deciding
16 whether a plaintiff has stated a claim, the court must assume
17 that the plaintiff's allegations are true and draw all reasonable
18 inferences in the plaintiff's favor.  <u>Usher v. City of Los</u>
19 <u>Angeles</u>, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court
20 is not required to accept as true "allegations that are merely
21 conclusory, unwarranted deductions of fact, or unreasonable
22 inferences."  <u>In re Gilead Scis. Sec. Litig.</u>, 536 F.3d 1049, 1055
23 (9th Cir. 2008) (internal quotation mark omitted).

24       Although the court is generally limited to considering
25 the complaint when deciding a motion to dismiss, a court may
26 consider outside materials if (1) the authenticity of the
27 materials is not disputed and (2) the plaintiff has alleged the
28 existence of the materials in the complaint or the complaint

3

1  "necessarily relies" on the materials.  <u>Lee v. City of Los</u>

2  <u>Angeles</u>, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted).

3  Defendants have again asked the court to consider a document

4  titled "Rocklin Police Department Internal Affairs Investigation

5  03-09" ("IA Document"), which they submitted under seal.

6  (Siemens Decl. Ex. A (Docket No. 45).)

7         Although the TAC refers to and even quotes from a

8  report that appears to be the IA Document, the report does not

9  form the exclusive basis of plaintiffs' claims.  For example, the

10  TAC also alleges that plaintiffs' rights were violated when

11  "defendants" allegedly made "oral and written statements about

12  the contents of the report and exhibits to third persons who were

13  not entitled to have access to said documents, report and

14  attached exhibits."  (TAC ¶ 19.)  The IA Document that defendants

15  submitted also appears to be incomplete, as the TAC and the IA

16  Document itself refer to exhibits that include video tapes,

17  recordings, and transcripts, and such exhibits are absent from

18  the IA Document.  (<u>See</u> <u>id.</u> ¶ 18; Siemens Decl. Ex. A at 1-3.)

19  Accordingly, the court will not consider the IA Document because

20  evaluating it would result in an incomplete assessment of

21  plaintiffs' allegations.

22  II.  <u>Claims Under 42 U.S.C. § 1983</u>

23         In relevant part, § 1983 provides:

24         Every person who, under color of any statute, ordinance,
           regulation, custom, or usage, of any State . . . ,
25         subjects, or causes to be subjected, any citizen of the
           United States . . . to the deprivation of any rights,
26         privileges, or immunities secured by the Constitution and
           laws, shall be liable to the party injured in an action
27         at law, suit in equity or other proper proceeding for
           redress . . . .

28

4

1  42 U.S.C. § 1983.  Section 1983 itself is not a source of

2  substantive rights; it provides a cause of action against any

3  person who, under color of state law, deprives an individual of

4  federal constitutional rights or limited federal statutory

5  rights.  Id.; Graham v. Connor, 490 U.S. 386, 393-94 (1989).

6       In their First Amended Complaint and Second Amended

7  Complaint, plaintiffs based their § 1983 claims on alleged

8  violations of their informational privacy and Fourth Amendment

9  rights.  In their TAC, plaintiffs again allege violations of

10  these rights and also add § 1983 claims based on alleged

11  violations of their substantive due process, procedural due

12  process, and equal protection rights.

13       A.   Informational Privacy

14       The Ninth Circuit has held that the Constitution

15  protects an "individual interest in avoiding disclosure of

16  personal matters," which courts have generally referred to as the

17  right to informational privacy.[3]  In re Crawford, 194 F.3d 954,

18  _____

19     [3]   One day after this court issued its last decision
   granting defendants' motion to dismiss, the Supreme Court decided
20  a case in which the plaintiffs claimed a violation of their
   informational right of privacy.  NASA v. Nelson, --- U.S. ----, -
21  ---, 131 S. Ct. 746, 751 (2011).  The Court explained that, "[i]n
   two cases decided more than 30 years ago, this Court referred
22  broadly to a constitutional privacy 'interest in avoiding
   disclosure of personal matters.'"  Id. (citing Whalen v. Roe, 429
23  U.S. 589, 599-600 (1977) and Nixon v. Adm'r of Gen. Servs., 433
   U.S. 425, 457 (1977)).  In resolving the case before it, the
24  Court "assume[d], without deciding, that the Constitution
   protects a privacy right of the sort mentioned in Whalen and
25  Nixon," referring to the right as an "'interest in avoiding
   disclosure' that may 'arguably ha[ve] its roots in the
26  Constitution.'"  Id. (quoting Whalen, 429 U.S. at 599, 605)
   (alteration in original).  Likewise, this court assumes, without
27  deciding, that such a right exists.
        In his dissent, joined by Justice Thomas, Justice
28  Scalia criticized the majority for declining to decide the issue

5

958 (9th Cir. 1999) (internal quotation marks omitted).
"[C]ourts have construed this right narrowly, limiting it to
those rights which are 'fundamental or implicit in the concept of
ordered liberty.'" Carver v. Rathlesberger, No. 04-1918 DFL PAN,
2005 WL 3080856, at *2 (E.D. Cal. Nov. 11, 2005) (quoting St.
Michael's Convalescent Hosp. v. California, 643 F.2d 1369, 1375
(9th Cir. 1981)); accord Lee v. City of Columbus, --- F.3d ----,
----, 2011 WL 611904, at *12-13 (6th Cir. 2011).  To merit
constitutional protection, the information disclosed must be of
such a "highly personal or sensitive nature that it falls within
the zone of confidentiality." Flanagan v. Munger, 890 F.2d 1557,
1570-71 (10th Cir. 1989).

        For example, courts have held that individuals have a
protected informational privacy interest in medical information
obtained from tests for syphilis, pregnancy, and sickle cell
trait, Norman-Bloodsaw v. Lawrence Berkeley Lab., 135 F.3d 1260,
1269-70 (9th Cir. 1998), prior sexual relationships that have no
bearing on job performance, Thorne v. City of El Segundo, 726
F.2d 459, 471 (9th Cir. 1983), and HIV status or AIDS diagnosis,
Doe v. Att'y Gen. of U.S., 941 F.2d 780, 796 (9th Cir. 1991).  On
the other hand, courts have held that individuals lack a
constitutional right to informational privacy in the disclosure
of a police department reprimand and the reasons for the
reprimand, Flanagan, 890 F.2d at 1570-71, and the collection and
disclosure of Social Security numbers in documents filed with the

and concluded that the "invented" "federal constitutional right
to 'informational privacy' does not exist." Id. at 764 (Scalia,
J., dissenting).

1   bankruptcy court.   In re Crawford, 194 F.3d at 960.

2          In its prior two orders, this court granted defendants'

3   motions to dismiss plaintiffs' § 1983 claims based on their

4   rights to informational privacy because plaintiffs' allegations

5   were too conclusory and general.   The court explained that, "[i]n

6   order for the court to determine whether the allegedly disclosed

7   information rose to the level required to amount to a violation

8   of the Constitutional right of privacy, the nature and substance

9   of that information must be set forth in the complaint."

10  Olivera, 2011 WL 219592, at *4; see also Olivera, 2010 WL

11  4723712, at *4.   The court further emphasized that plaintiffs'

12  conclusory and general allegations prevented it from

13  characterizing Siemens's alleged conduct in order to determine

14  whether he was entitled to qualified immunity.   Olivera, 2011 WL

15  219592, at *4.

16         Now, in their fourth complaint in this case, plaintiffs

17  again attempt to allege violations of their informational privacy

18  rights.   In addition to maintaining their prior allegations that

19  the court held were too conclusory, such as allegations that the

20  disclosures included "statements about intoxication, sexual view

21  points, sexual orientation, sexual relations, arrest records, and

22  discrimination against third persons," (TAC ¶ 19), plaintiffs

23  have added new allegations about the disclosures in their TAC.

24  The new allegations generally cover five topics: 1) the specific

25  documents and materials disclosed; 2) plaintiffs' potentially

26  sexually-suggestive conduct and one's possible views on sexual

27  orientation; 3) plaintiffs' alleged intoxication and demeanor the

28  night of the incident; 4) the use of ethnic slurs; and 5)

7

1  information about Olivera's relationship with his cousin.[4]

2      First, with respect to the specific documents and

3  materials disclosed, the TAC alleges that the report included:

4      various exhibits, including video surveillance tapes by
5      the Humboldt County Sheriff's Office and a video tape
       which had been edited by the Blue Lake Indian Cassino
6      [sic], the Humboldt County Sheriff's Office dispatch
       tape, communications between dispatchers and deputies,
7      interrogatory [sic] records of both OLIVERA and ORTMANN,
       transcripts of the audio tapes of the internal affairs
8      investigation interviews of OLIVERA and ORTMANN, as well
       as transcripts of audio tapes of various witnesses.  It
9      also contained a copy of the booking from the Blue Lake
       Police Department, copies of the bookings from the
10     Humboldt County Sheriff's Office, copies of photographs
       of OLIVERA's pickup truck, and copies of the
       interrogation records of OLIVERA AND ORTMANN.
11

12  (Id. ¶ 18.)  The mere release of these particular documents and

13  exhibits does not give rise to a violation of the informational

14  right to privacy unless the content of the documents merits

15  protection under the right to informational privacy.  See

16  Flanagan, 890 F.2d at 1570-71 (discussing Denver Policemen's

17  Protective Ass'n v. Lichtenstein, 660 F.2d 432 (10th Cir. 1981)).

18  Similarly, the mere disclosure of plaintiffs' names and "the

19  charges against [plaintiffs], the specific General Orders

20  allegedly violated, and a conduct unbecoming charge," (TAC ¶ 18),

21  do not implicate their rights to informational privacy.  See

22  Flanagan, 890 F.2d at 1570-71.

23      Next, the TAC added allegations that the report

24  disclosed conduct by plaintiffs that could be interpreted to be

25  of a sexual nature, alleging that the "videos showed Plaintiffs

26  _____

27      [4]    Plaintiffs also allege that the report "disclosed the
    identities and telephone numbers of non-law enforcement witness
28  [sic]."  (TAC ¶ 22.)  Plaintiffs undoubtedly lack a protected
    privacy interest in information about unrelated third parties.

having contact with females inside the Blue Lake Casino, [and] showed 'shadow games' with females." (TAC ¶ 19.)  First, it is unclear what plaintiffs mean by "contact with females" or "shadow games."  Second, even if such allegations could be considered sexually suggestive, the potential sexual nature of the conduct does not rise to the level that courts have found protected. See, e.g., Thorne, 726 F.2d at 471; Bloch v. Ribar, 156 F.3d 673, 685-86 (6th Cir. 1998).

The TAC also alleges that the videos showed plaintiffs "playing with a guy's ear lobes, other activities with males in the bar, . . . and use of the derogatory term 'faggot.'" (TAC ¶ 19.)  Presumably, plaintiffs are attempting to suggest that the report contained information relating to homosexual activity, which might, under the right set of facts, come within the protections of informational privacy.  The court will not, however, guess what plaintiffs mean by "activities with males in the bar" or whether plaintiffs referred to someone else or were themselves referred to as a "faggot."  Plaintiffs' allegations cannot rise to the level of plausibility by relying on innuendo and suggestive language.

Plaintiffs' third set of new allegations indicate that the report disclosed disparaging information about their alleged intoxication and demeanor the night of the incident:

> [The report] is descriptive of a confrontation and fights in the Casino bar . . . [and] of the alleged public intoxication of OLIVERA and states that he was drunk in public and in his vehicle.  It describes Plaintiffs' demeanor as rude, uncooperative and argumentative.  They are described as saying "they were better cops than anyone who was there at the incident."  It shows a video tape of the alleged bar fight in the Blue Lake Casino. They are described as being "bullies" and trying to look

for fights with everyone.  There are at least eight(8)
statements in the internal affairs report from officers,
deputies and security personnel at the Blue Lake Casino
that paint the conduct of the Plaintiffs as derogatory,
uncooperative, drunk and very belligerent . . . and that
they showed their badges while off-duty.

(TAC ¶¶ 20-22.)  While plaintiffs may understandably be
embarrassed about their alleged conduct that night, nothing about
their alleged level of intoxication or rude or combative behavior
in a public place involves matters of a highly personal or
sensitive nature to merit constitutional protection.  Not only
did plaintiffs allegedly engage in this conduct in public, see
Flanagan, 890 F.2d at 1570-71 (emphasizing plaintiffs' lack of a
protected informational privacy interest when their conduct
occurred in public), the Constitution simply does not provide "a
free-standing right not to have the world know bad things about
you."  Nelson v. NASA, 568 F.3d 1028, 1053 (9th Cir. 2009)
(denying rehearing en banc) (Kozinksi, J., dissenting).

        Fourth, plaintiffs allege that "ethnic slurs were
allegedly made to Hispanic customers in the bar." (TAC ¶ 19.)
Again, plaintiffs lack a protected privacy right in inappropriate
comments they may have made in a public setting.

        Lastly, the TAC alleges that the report "contained
information about OLIVERA's family and personal relationship with
his female cousin."  (Id. ¶ 20.)  Similar to plaintiffs'
allegations about "activities with males at the bar," this
allegation uses such broad and ambiguous language that the court
cannot determine whether it gives rise to a right to
informational privacy.  As the Sixth Circuit explained in
Kallstrom, while constitutional protection has been extended to

family relationships, a right to informational privacy exists
only if the release of the information would "seriously infringe
upon the intimate decisionmaking incidental to the protection of
the family." Kallstrom, 136 F.3d at 1061.  Although the court
could surmise information about Olivera's family and personal
relationship with his cousin that might plausibly give rise to a
protected interest, it can just as easily--if not more easily--
surmise information that would not.

       Accordingly, because the allegations in plaintiffs' TAC
either fail to give rise to a cognizable right to informational
privacy claim or are still too broad for the court to evaluate,
the court will again grant defendants' motion to dismiss
plaintiffs' § 1983 claims based on alleged violations of their
informational privacy rights.

       B.   Fourth Amendment

       The Fourth Amendment provides that "[t]he right of the
people to be secure in their persons, houses, papers, and
effects, against unreasonable searches and seizures, shall not be
violated . . . ." U.S. Const. art. IV.  "Searches and seizures
by government employers or supervisors of the private property of
their employees . . . are subject to the restraints of the Fourth
Amendment." O'Connor v. Ortega, 480 U.S. 709, 715 (1987)
(plurality opinion).  "A 'search' occurs when an expectation of
privacy that society is prepared to consider reasonable is
infringed" and a "'seizure' of property occurs when there is some
meaningful interference with an individual's possessory interests
in that property." United States v. Jacobsen, 466 U.S. 109, 113
(1984).

11

Plaintiffs allege that Siemens violated their Fourth Amendment rights when their "employment records were illegally seized and used by the Defendants." (TAC ¶ 73.) In attempting to assess the plausibility of this claim, the court has difficulty fitting it within the Fourth Amendment context of a seizure, especially because the internal affairs report was created and maintained by the Rocklin Police Department and Siemens had a copy of the report and knew about its content before the alleged "seizure" occurred. (See TAC ¶ 19.) It is precisely these types of circumstances--when "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right"--about which the Supreme Court was thinking of when it reversed its prior precedent and held that courts could assume a constitutional violation occurred and examine whether the official is entitled to qualified immunity. Pearson v. Callahan, 555 U.S. 223, ----, 129 S. Ct. 808, 818 (2009).

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" Pearson, 129 S. Ct. at 815 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The test for qualified immunity is: (1) identification of the specific right being violated; (2) determination of whether the right was so clearly established as to alert a reasonable officer to its constitutional parameters; and (3) a determination of whether a reasonable officer would have believed that the policy or decision in question was

12

1   lawful." <u>McDade v. West</u>, 223 F.3d 1135, 1142 (9th Cir. 2000).

2          The clearly established inquiry "serves the aim of

3   refining the legal standard and is solely a question of law for

4   the judge." <u>Tortu v. Las Vegas Metro. Police Dep't</u>, 556 F.3d

5   1075, 1085 (9th Cir. 2009).  As the Supreme Court has recognized,

6   whether the unlawfulness of certain conduct is clearly

7   established "depends largely 'upon the level of generality at

8   which the relevant "legal rule" is to be identified.'" <u>Wilson v.

9   Layne</u>, 526 U.S. 603, 614 (1999) (quoting <u>Anderson v. Creighton</u>,

10  483 U.S. 635, 639 (1987)).  The right must be defined in a

11  "particularized, and hence more relevant, sense," requiring a

12  court to strike a balance between defining a right too generally

13  so that the definition necessarily leads to the conclusion that

14  the right is clearly established and defining the right too

15  narrowly so that prior precedent must mirror the facts of the

16  case in order to conclude that the right has been clearly

17  established.  <u>Saucier v. Katz</u>, 533 U.S. 194, 202-03 (2001).

18          If the court concludes a right is not clearly

19  established, the official is entitled to qualified immunity.  <u>Id.</u>

20  at 202.  If a right is clearly established, an official is not

21  entitled to qualified immunity unless a reasonable official would

22  not have known that his conduct violated the clearly established

23  right.  <u>See</u> <u>Anderson</u>, 483 U.S. at 640.  The reasonableness

24  inquiry recognizes 'that it is inevitable that law enforcement

25  officials will in some cases reasonably but mistakenly conclude'

26  that their conduct comports with the Constitution and thus

27  shields officials from liability when their mistake is

28  reasonable.  <u>Anderson</u>, 483 U.S. at 641.

13

1    While different conclusions can be reached on the

2 clearly established and reasonableness inquires, the two

3 inquiries are usually intertwined, and the Supreme Court has

4 explained that "[t]he relevant, dispositive inquiry in

5 determining whether a right is clearly established is whether it

6 would be clear to a reasonable officer that his conduct was

7 unlawful in the situation he confronted." Saucier, 533 U.S. at

8 202; see also Anderson, 483 U.S. at 640 ("The contours of the

9 right must be sufficiently clear that a reasonable official would

10 understand that what he is doing violates that right.").  Given

11 the overlap of the two inquiries, many courts treat the analysis

12 as a single inquiry. See, e.g., Pearson, 129 S. Ct. at 816 ("If

13 the court finds the constitutional right was clearly established

14 such that a reasonable officer would be aware that his or her

15 conduct was unconstitutional, then the officer is not entitled to

16 qualified immunity.").

17    Initially, the court has serious doubts that

18 authorizing an internal affairs report containing personal

19 information about plaintiffs to be communicated to others could

20 constitute a "search" or "seizure" within the meaning of the

21 Fourth Amendment under any stretch of existing law.

22 Nevertheless, for purposes of the qualified immunity analysis,

23 the court will assume, without deciding, that it did in fact

24 constitute a Fourth Amendment violation.  The court is unable to

25 find--and plaintiffs have not cited--a single case with similar

26 facts in which a Fourth Amendment violation was found.  While "it

27 is not necessary that a case be on 'all fours' with the facts of

28 the instant case," the "contours of the right" must be

14

"sufficiently clear that a reasonable official would understand
that what he is doing violates that right." Rogers v. County of
San Joaquin, 487 F.3d 1288, 1297 (9th Cir. 2007) (quoting
Saucier, 533 U.S. at 202) (internal quotation marks omitted).
Here, the lack of case law combined with facts that do not come
within a traditional idea of a "seizure" under the Fourth
Amendment would prevent a reasonable officer from believing that
his conduct violated the Fourth Amendment.

In contrast to the lack of any precedent suggesting a
violation, the Supreme Court has repeatedly recognized that the
"government has significantly greater leeway in its dealings with
citizen employees than it does when it brings its sovereign power
to bear on citizens at large." Engquist v. Or. Dep't. of Agric.,
553 U.S. 591, 599 (2008); see also City of Ontario v. Quon, ---
U.S. ----, ----, 130 S. Ct. 2619, 2628 (2010).

The Ninth Circuit has also explained that "the
application of the Fourth Amendment to the employment context
presents special issues[ and, w]hile 'policemen, like teachers
and lawyers, are not relegated to a watered-down version of
constitutional rights,' the Constitution does not afford public
employees greater workplace rights than those enjoyed by their
private sector counterparts." Aquilera v. Baca, 510 F.3d 1161,
1167 (9th Cir. 2007) (quoting Garrity v. New Jersey, 385 U.S.
493, 500 (1967)). In rejecting police officers' claim that they
were seized when they were ordered to remain at their station of
duty pending questions about possible misconduct, the Ninth
Circuit in Aquilera concluded that "a law enforcement agency has
the authority as an employer to direct its officers to remain on

1  duty and to answer questions from supervisory officers as part of

2  a criminal investigation into the subordinates' alleged

3  misconduct."  Id. at 1168, 1170-71.

4         After the conduct at issue in this case occurred, the

5  Third Circuit rejected somewhat analogous Fourth Amendment claims

6  by police officers in Roberts v. Mentzer, 382 Fed. App'x 165 (3d

7  Cir. 2010).  Although decisions issued after the conduct at

8  question in this case could not put an officer on notice that his

9  conduct is violating clearly established law, a court's rejection

10 of such claims--even after the conduct in question--illustrates

11 that clearly established law still does not exist.  In Roberts,

12 police officers claimed a Fourth Amendment violation based on the

13 police department's release of their personnel records to

14 attorneys working on a case in which the officers were going to

15 testify as witnesses.  Id. at 161.  In rejecting the officers'

16 Fourth Amendment claims, the Third Circuit explained that

17 plaintiffs failed to provide the court "with any case law

18 indicating that employees have a privacy interest in the

19 personnel files maintained by their employers," and ultimately

20 concluded that the officers lacked a reasonable expectation of

21 privacy in their personnel files.  Id. at 165.

22         Based on the absence of precedent finding a

23 constitutional violation in similar situations and the backdrop

24 of case law distinguishing the inquiry when the government is

25 acting as an employer, the court concludes that plaintiffs'

26 Fourth Amendment rights were not clearly established such that a

27 reasonable officer would know that his "seizure" of the internal

28 affairs report about plaintiffs ran afoul of the Fourth

16

Amendment.  Accordingly, the court will grant defendants' motion
to dismiss plaintiffs' § 1983 claim based on the Fourth Amendment
because Siemens is entitled to qualified immunity on that claim.

    C.  <u>Remaining Constitutional Rights</u>

    When the court granted plaintiffs leave to amend on two
prior occasions, it expected plaintiffs to improve their § 1983
claims based on their alleged informational privacy rights.
Instead of making a genuine effort to improve the allegations
supporting that claim, plaintiffs' counsel decided to throw in
the gamut of new constitutional claims in the TAC to see what
might stick.  With such a haphazard approach, it is not
surprising that the allegations in each of the new constitutional
claims fail to even recognize the fundamental aspects unique to
the different constitutional rights.

    First, "[a] threshold requirement to a substantive or
procedural due process claim is the plaintiff's showing of a
liberty or property interest protected by the Constitution."
<u>Wedges/Ledges of Cal., Inc. v. City of Phoenix</u>, 24 F.3d 56, 62
(9th Cir. 1994).  For a substantive due process claim, a
plaintiff must generally "show a government deprivation of life,
liberty, or property" that is regarded as "fundamental."
<u>Brittain v. Hansen</u>, 451 F.3d 982, 990-91 (9th Cir. 2006)
(internal quotation marks omitted).  A protected liberty or
property interest giving rise to a procedural due process claim
generally requires that the "individual has a reasonable
expectation of entitlement deriving from existing rules or
understandings that stem from an independent source such as state
law."  <u>Wedges/Ledges of Cal., Inc.</u>, 24 F.3d at 62; <u>see also</u> <u>Paul</u>

17

1  <u>v. Davis</u>, 424 U.S. 693, 710–11 (1976) ("[Liberty or property

2  interests] attain this constitutional status by virtue of the

3  fact that they have been initially recognized and protected by

4  state law . . . .").

5         In their § 1983 claims based on their substantive and

6  procedural due process rights, however, plaintiffs allege only

7  that they "were not given Notice of the Release of their

8  confidential personal and personnel information by the

9  Defendants."  (TAC ¶¶ 86, 92.)  Plaintiffs fail to allege that

10 they had a protected liberty or property interest in the

11 information released.  To the extent plaintiffs' alleged

12 substantive due process rights rely on a protected right in the

13 privacy of the disclosed information, plaintiffs' claim is merely

14 duplicative of their claim based on violations of their right to

15 informational privacy and fails for the reasons previously

16 discussed.  <u>See, e.g.</u>, <u>Lee</u>, --- F.3d ----, ----, 2011 WL 611904,

17 at *12 (describing the informational privacy right as "rooted in

18 the substantive due process protections") (internal quotation

19 marks omitted).

20        Moreover, any injury plaintiffs allegedly experienced

21 to their reputation as a result of the disclosure of the internal

22 affairs report is insufficient to merit constitutional

23 protection.  <u>See</u> <u>Johnson v. Barker</u>, 799 F.2d 1396, 1399 (9th Cir.

24 1986) ("<u>Paul v. Davis</u>[, 424 U.S. 693 (1976),] teaches that damage

25 to reputation, standing alone, cannot state a claim for relief

26 under section 1983 because reputation is neither 'liberty' nor

27 'property' guaranteed against state deprivation without due

28 process of law.").  Without an alleged protected property or

liberty interest, plaintiffs' claims based on the alleged
violations of their substantive and procedural due process rights
fail and defendants' motion to dismiss those claims must be
granted.

"The Equal Protection Clause of the Fourteenth
Amendment commands that no State shall 'deny to any person within
its jurisdiction the equal protection of the laws,' which is
essentially a direction that all persons similarly situated
should be treated alike." City of Cleburne v. Cleburne Living
Ctr., 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S.
202, 216 (1982)).  "The first step in equal protection analysis
is to identify the [defendants'] classification of groups."
Freeman v. City of Santa Ana, 68 F.3d 1180, 1187 (9th Cir. 1995)
(quoting Country Classic Dairies, Inc. v. Mont. Dep't of Commerce
Milk Control Bureau, 847 F.2d 593, 596 (9th Cir. 1988))
(alteration in Freeman);.

Plaintiffs' TAC fails to allege that plaintiffs were a
part of some "identifiable group," as is required in a
traditional equal protection claim.  Instead, plaintiffs simply
allege that "they were treated differently than other officers,
who were employed by the Defendants."  (TAC ¶ 97.)  This
allegation appears to rely on the "class of one" theory of equal
protection in which a plaintiff claims to have "been
intentionally treated differently from others similarly situated
and that there is no rational basis for the difference in

1    treatment."  Willowbrook v. Olech, 528 U.S. 562, 563 (2000).[5]

2    The Supreme Court has held, however, that "the class-of-one

3    theory of equal protection has no application in the public

4    employment context" based, in part, on the "common-sense

5    realization that government offices could not function if every

6    employment decision became a constitutional matter."  Engquist,

7    553 U.S. at  599 (quoting Connick v. Myers, 461 U.S. 138, 143

8    (1983)) (internal quotation marks omitted).  Accordingly, given

9    the insufficiency of plaintiffs' allegations, the court must also

10   grant defendants' motion to dismiss plaintiffs' § 1983 claim

11   based on their alleged equal protection rights.[6]

12        D.   Monell Claims

13             As § 1983 does not provide for vicarious liability,

14   local governments "may not be sued under § 1983 for an injury

15   inflicted solely by its employees or agents."  Monell v. Dep't of

16   Soc. Servs. of N.Y., 436 U.S. 658, 693 (1978).  "Instead, it is

17   when execution of a government's policy or custom, whether made

---

18

19        [5]    At oral argument, plaintiffs' counsel indicated that,
20   since there are two plaintiffs in this case, he is not arguing
     under a "class-of-one" theory because there is a class of two
     here.  This superficial distinction does not create an
21   identifiable group giving rise to a traditional equal protection
     claim.  See Thornton v. City of St. Helens, 425 F.3d 1158, 1166-
22   67 (9th Cir. 2005) ("The groups must be comprised of similarly
     situated persons so that the factor motivating the alleged
23   discrimination can be identified.  An equal protection claim will
     not lie by conflating all persons not injured into a preferred
24   class receiving better treatment than the plaintiff.") (internal
     quotation marks omitted).

25
          [6]    Because the court will grant defendants' motion to
26   dismiss all of plaintiffs' § 1983 claims, the court must also
     grant defendants' motion to dismiss plaintiffs' § 1985 claim.
27   See Thornton, 425 F.3d at 1168 ("The absence of a [42 U.S.C. §]
     1983 deprivation of rights precludes a [42 U.S.C. §] 1985
28   conspiracy claim predicated on the same allegations.") (internal
     quotation marks omitted).

by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id.

A finding that Siemens did not violate plaintiffs' constitutional rights "precludes section 1983 municipal liability regardless of whether there was a County policy." Dixon v. Wallowa Cnty., 336 F.3d 1013, 1021 (9th Cir. 2003). The court must therefore dismiss all of plaintiffs' Monell claims with the exception of their Monell claim based on the Fourth Amendment.

With respect to their § 1983 claim against the City of Rocklin based on the Fourth Amendment, plaintiffs allege only that the City of Rocklin

> maintained a custom, practice and policy of allowing . . . their officers, officials and employees, including VIZZUSI and SIEMENS, to unlawfully, illegally, intentionally and willfully seize, use and disclose the private personal information and private peace officer confidential personnel records of the Plaintiffs, and other similarly situated employees, without authorization, permission and/or a court order.

(TAC ¶ 76.)

Since Iqbal, such conclusory allegations that merely allege the existence of a policy without providing factual content from which one could plausibly infer that such a policy exists have been repeatedly rejected. See, e.g., Palermo v. Town of North Reading, 370 Fed. App'x 128, 131 n.4 (10th Cir. 2010) (dismissing a Monell claim when "the complaint as a whole contained no factual assertions whatsoever regarding Town policy"); Dimming v. Pima Cnty., No. CV-09-189-TUC-CKJ, 2011 WL 855797, at *2-3 (D. Ariz. Mar. 11, 2011) (same); Haley v. Gipson, No. CV 11-787, 2011 WL 838919, at *2 (C.D. Cal. Feb. 28, 2011)

21

1   (same); <u>Telles v. City of Waterford</u>, No. 1:10-cv-00982 AWI SKO,

2   2010 WL 5314360, at *4 (E.D. Cal. Dec. 20, 2010) (same).

3          Accordingly, given the insufficiency of plaintiffs'

4   conclusory allegations, the court will grant defendants' motion

5   to dismiss plaintiffs' <u>Monell</u> claim based on an alleged violation

6   of their Fourth Amendment rights.

7          E.   <u>Leave to Amend</u>

8          Generally, the "standard for granting leave to amend is

9   generous" and the court should not dismiss a complaint without

10  leave to amend if it "could conceive of facts that would render

11  plaintiff's claim viable." <u>Balistreri v. Pacifica Police Dep't</u>,

12  901 F.2d 696, 701 (9th Cir. 1990) (internal quotation marks

13  omitted).  The lenient standard reaches its limits, however, when

14  a plaintiff repeatedly fails to allege sufficient facts,

15  especially in light of repeated orders from the court

16  identifying, in detail, the deficiencies of plaintiffs'

17  allegations.  <u>See, e.g.</u>, <u>Dumas v. Kipp</u>, 90 F.3d 386, 393 (9th

18  Cir. 1996) ("Considering that [plaintiff] filed four complaints

19  and yet continued to allege insufficient facts, the district

20  court properly dismissed his action without leave to amend.").

21         Here, plaintiffs are now on their fourth attempt to

22  allege a violation of their right to informational privacy.

23  While plaintiffs' vague and suggestive language invites

24  creativity on behalf of the court to surmise facts that could

25  give rise to a such a right, the court has clearly told

26  plaintiffs on two prior occasions that they must include the

27  facts in their complaint.  At oral argument, the court also asked

28  plaintiffs' counsel if he had included all the facts he could in

1   the TAC, and he indicated that he had.  Without the possibility

2   of additional facts to allege disclosures of information that

3   could conceivably give rise to a protected interest, any further

4   amendment would be futile.  Accordingly, the court will dismiss

5   plaintiffs' § 1983 and <u>Monell</u> claims based on their right to

6   informational privacy with prejudice.

7        As plaintiffs' § 1983 claims based on their substantive

8   due process, procedural due process, and equal protection rights

9   appeared for the first time in the TAC, the court will not

10  dismiss those claims, or plaintiffs' <u>Monell</u> claim based on the

11  Fourth Amendment, with prejudice.  However, the court has serious

12  doubts about whether plaintiffs can sufficiently allege those

13  claims and expects plaintiffs' counsel to file a fifth complaint

14  only if it addresses the insufficiencies discussed herein and

15  violations of those constitutional rights are plausible given the

16  facts of this case.

17        F.   <u>State Law Claims</u>

18        Under 28 U.S.C. § 1367(c)(3), a district court may

19  decline to exercise supplemental jurisdiction over state law

20  claims if "the district court has dismissed all claims over which

21  it has original jurisdiction . . . ."  28 U.S.C. § 1367(c)(3);

22  <u>see also</u> <u>Acri v. Varian Assocs., Inc.</u>, 114 F.3d 999, 1000 (9th

23  Cir. 1997) ("[A] federal district court with power to hear state

24  law claims has discretion to keep, or decline to keep, them under

25  the conditions set out in § 1367(c).").  Factors for a court to

26  consider in deciding whether to dismiss supplemental state claims

27  include judicial economy, convenience, fairness, and comity.

28  <u>Imagineering, Inc. v. Kiewit Pac. Co.</u>, 976 F.2d 1303, 1309 (9th

23

1   Cir. 1992).  "[I]n the usual case in which federal law claims are

2   eliminated before trial, the balance of factors . . . will point

3   toward declining to exercise jurisdiction over the remaining

4   state law claims."  <u>Reynolds v. Cnty. of San Diego</u>, 84 F.3d 1162,

5   1171 (9th Cir. 1996), <u>overruled on other grounds by</u> <u>Acri</u>, 114

6   F.3d at 1000.

7        Plaintiffs' case has been pending for less than nine

8   months and, although the court issued a Status (Pretrial

9   Scheduling) Order in December, the case has yet to proceed beyond

10  the motion to dismiss stage.  As none of the parties have posed

11  any extraordinary or unusual circumstances suggesting that the

12  court should retain jurisdiction over plaintiffs' state law

13  claims in the absence of any federal claims, unless plaintiffs

14  can successfully amend their complaint consistent with this

15  Order, the court will decline to exercise supplemental

16  jurisdiction under § 1367(c)(3) over plaintiffs' state law claims

17  and will accordingly grant defendants' motion to dismiss those

18  claims.

19       IT IS THEREFORE ORDERED that defendants' motion to

20  dismiss plaintiffs' Third Amended Complaint in its entirety be,

21  and the same hereby is, GRANTED, and plaintiffs' § 1983 and

22  <u>Monell</u> claims based on their right to informational privacy are

23  dismissed with prejudice.

24       Plaintiffs have seven days from the date of this Order

25  to file an amended complaint alleging § 1983 claims based on

26  their substantive due process, procedural due process, or equal

27  protection rights, a <u>Monell</u> claim based on the Fourth Amendment,

28  and any state law claims from their TAC.  The court expects

plaintiffs to file a Fourth Amended Complaint only if they can actually allege cognizable claims under one or more of those constitutional rights.  The leave granted to plaintiffs is limited to the aforementioned claims and is not a carte blanche invitation for plaintiffs to see if they can conjure up more new claims.

DATED: March 31, 2011

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE